for this exception arises out of the fact that the owner of the cattle may rightfully drive them along the public highway, and there is no obligation upon the owner of the cattle to fence the highway along which he expects to drive his cattle. Therefore, if, without fault on his part and owing to a lack of fences intervening between the lands trespassed upon and the highway, the cattle suddenly run from the highway into the adjacent lands, the owner of the cattle is not to be mulcted in damages if he makes fresh pursuit and uses all proper endeavors to drive them back into the road. The contrary rule would make prohibitive the use of the public highway for the driving of cattle, and the owner of adjacent lands must protect them by fences if he seeks to be immune from all possible damage of that sort.

It is conceded by the appellant here that, if his land had been immediately adjacent to the highway, he could have had no claim against the owner of the cattle in question, and he rests his case upon a supposed distinction between the rights of the owner of land abutting on the highway and the owner of land not touching the highway; and some things have been said in the reported cases which give support to the appellant's contention. See McDonnell v. Pittsfield Railroad Co., 115 Mass. 564. But such a distinction does not seem to be logical nor just when applied to the facts of this case. If the defendant is not liable for such damage as his cattle did upon Busher's land, because the cattle escaped from the highway where they were lawfully being driven, why should the plaintiff have a cause of action? In one dash for liberty the destructive herd rushed, unimpeded by any fence or other obstruction, directly across the front strip owned by Busher and onto the land of Wood. The use of the highway by defendant was lawful. He was exercising all proper care, and could not have prevented the entry of the cattle upon Wood's land any easier than he could their entry upon the land of Busher; and, for the same reason that he is not liable to Busher for any damage done him, he is free from obligation to the plaintiff, in the absence of proof that the escape of the herd from the roadway was due to the lack of some reasonable precaution on the part of the defendant.

The judgment appealed from is affirmed, with costs.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Richard E. White, for appellant.
George E. Warner, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of Sutherland, J., in the County Court.

---

(108 App. Div. 170.)

STOCKTON v. CITY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. October 18, 1905.)

INJUNCTION—PENDENTE LITE—INSUFFICIENT SHOWING.

On the ground that a "clear violation of law" is not shown, a temporary injunction is properly denied in a suit by a taxpayer to have declared void a lighting contract between a city and a gas company; it being exceedingly doubtful, to say the least, whether the charter provision (Laws 1891, p. 199, c. 105, § 283) for publication of a notice before a contract is entered into applies to contracts the power to make which is delegated exclusively to the legislative branch of the city government, as is a lighting contract, or whether section 506, prohibiting the purchase of patented articles, except under conditions allowing competition, applies to a contract for their "use" for a limited period.

Appeal from Special Term, Erie County.

Action by Lewis Stockton against the city of Buffalo and others. From an order denying an injunction pendente lite, plaintiff appeals. Affirmed.

The following is the opinion of Kenefick, J., in the court below:

The plaintiff sues as a taxpayer to have declared null and void a contract entered into between the city and the Buffalo Gas Company for lighting public buildings and streets and keeping the lamps in repair. Pending the trial of the action he asks that the city be enjoined from substituting Welsbach lamp heads and burners under this provision of the contract, namely: "The city agrees that during the term of this contract it will use only those burners and lamp heads now in use by said city, reserving unto itself the right to call upon said contractor to supply and substitute Welsbach lamp heads and burners as the commissioner of public works may from time to time determine at and·for the sum of $24.75 per light per year, said Welsbach lamp heads and burners to remain the property of said contractor." This provision is claimed to be illegal for the reason that no competition was permitted as to lamp heads and burners. The failure to require competition, it is contended, is in violation of sections 283 and 505 of the city charter. Laws 1891, pp. 199, 243, c. 105. It is claimed by the defendants that neither section is applicable.

Under section 416, p. 225, of the charter, the city is authorized to contract for lighting for a term not exceeding five years, and it specially provides that sections 407 and 408 of the charter shall not apply to such contracts. The sections, from the operation of which such contracts are exempted, provide in substance that no work or improvement involving an expense exceeding $500 shall be ordered, except upon a vote of two-thirds of each board of the common council and after publication of a notice of intention to order the work, and that no contract shall be entered into until after publication of a notice inviting sealed proposals to do the work or make the improvement pursuant to plans and specifications, and until an assessment therefor has been confirmed. It is claimed by the plaintiff that, notwithstanding the exemption of this contract from the above sections, which it will be noticed provide for the publication of a notice inviting sealed proposals, the same requirement is contained in section 283 of the charter, and that the latter section requires the publication of such a notice before a valid contract for lighting can be entered into. It is exceedingly doubtful, to say the least, whether section 283 applies to a lighting contract. Such a contract is required to be made by the city, acting through its legislative branch, and it would seem as though section 283 was intended to apply only to contracts which the commissioner of public works is authorized to make. Section 283 recognizes the power of the board of public works to make expenditures and enter into contracts in the performance of the work intrusted to it by the charter; but, fearing, apparently, that this power might be abused, it required the consent of the legislative body to any expenditure or contract involving the sum of $500 or over, and also required that proposals should be invited and the contract let to the lowest bidder. The section does not appear to be applicable to contracts the power to make which is delegated exclusively to the legislative branch of the city government.

The plaintiff also claims that the provision of the contract above set forth is in violation of section 505 of the city charter, which provides: "Except for repairs no patented pavement shall be laid, and no patented article shall be advertised for, contracted for, or purchased, except under such circumstances that there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the person, board or body authorized to contract for such article so advertised for." A similar provision in the charter of the city of New York was under discussion in the case of Rose v. Low, 85 App. Div. 461, 83 N. Y. Supp. 598, and it was there said that: "We think what was intended was that there should·thereafter be no patented pavement laid and no purchase of a patented article except under conditions which would allow competition." And in the subsequent case of Kay v. Monroe, 93 App. Div. 484, 87 N. Y. Supp. 831, this

language was quoted with approval. Under the provision of the contract in question the city reserves the right to call upon the gas company during the period of the contract to use a certain patented lamp head and burner, and agrees to pay an extra fixed compensation for such use. If the true meaning of this section of the charter is indicated in the dictum in the case of Rose v. Low, supra, then it would appear that only the purchase of patented articles is prohibited, and that the use of such articles for a limited period would not fall within the operation of this section.

The general principle governing the granting of preliminary injunctions in actions of this kind is that the plaintiff must clearly show that "the official action complained of is illegal" (Abraham v. Meyers, 29 Abb. N. C. 384, 23 N. Y. Supp. 225, 228); that "the plaintiff's rights must be certain as to the law and the facts" (Nooman v. Grace, 49 N. Y. Super. Ct. 116); that "there is a clear violation of law" (People v. Mayor, 32 Barb. 102). Upon this application the plaintiff has not established that "clear violation of law" which would authorize the issuance of an injunction. The complaint charges no corruption on the part of the officials of the city in entering into the contract. The action can be tried very shortly, and the validity of the contract definitely determined by such trial. If the plaintiff's claims with respect to this provision of the contract are then sustained, the only possible increased expenditure the city will be put to will be for the use of such burners as may be installed from this time until such decision, and the use for that period of time only, and meanwhile the city will have the benefit of concededly better light.

The motion for an injunction is denied.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Louis W. Simpson, for the motion.
Jung, Penney & Keating, opposed.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of Kenefick, J., delivered at Special Term.

————————

METCALF v. McADOO, Police Com'r.

(Supreme Court, Special Term, Kings County. October, 1905.)

1. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—RETIREMENT OF POLICE-MAN—CERTIFICATE OF DISABILITY.

New York City Charter, Laws 1901, pp. 154–157, c. 466, §§ 355–357, authorizes the police commissioner to remove a police officer and place him on the pension fund, "upon a certificate of so many of the police surgeons as the commissioner may require" showing that he is permanently disabled so as to be unfit for duty, which certificate is to be filed in the police department. Section 276 allows 40 surgeons to the police department, but does not constitute them a board. *Held*, that a certificate of disability, purporting to be a resolution passed by the "board of surgeons of the police department" and certified by the board's president and secretary, which does not show how many or who of the 40 police surgeons were present, or how those present voted on the resolution, does not comply with the statute, and is insufficient to authorize the retirement of a police officer.

2. SAME—POLICE SURGEONS—ORGANIZATION INTO BOARD.

Since New York City Charter, Laws 1901, p. 118, c. 466, § 276, allowing 40 surgeons to the police department, does not constitute such surgeons a board, the police commissioner has no power to form them into a board, and a rule of the police department purporting so to do is invalid.